UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HANSPETER A. WALDER, | ) | CASE NO. 4:09 CV0088 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| UNITED STATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On January 13, 2009, pro se plaintiff Hanspeter Walder ("Plaintiff") filed the above-captioned in forma pauperis complaint pursuant to 42 U.S.C. § 1983 against the United States, the Bureau of Prisons, Federal Satellite Location Elkton ("FSL Elkton") Warden Sniezek, and CCA/Northeast Ohio Correctional Center ("N.E.O.C.C.") Warden J. Gunja. Mr. Walder, who is currently incarcerated at N.E.O.C.C., asserts that Defendants unilaterally breached an implied contract to calculate properly the amount of pre-custody credit to which he claims he is entitled. He

seeks $375 for each day he is imprisoned beyond October 9, 2008; $500 to compensate for the cost of photocopies, postage, typing paper and corrective ribbon; and $1 million in punitive damages "to be used as payment in full of the Court-imposed fine in the original criminal case (S1 02 CR 469 [RMB])." (Compl. at 11.)

*Background*

Plaintiff was indicted in 2002 in the United States District Court for the Southern District of New York and charged with embezzlement in violation of 18 U.S.C. §§ 656 & 2. *United States v. Walder*, No. S1 02 CR 469 (S.D. NY 2002). He pled guilty to the charges and was sentenced on January 10, 2003, to 97 months in prison.

This complaint is the second action Plaintiff has filed in this court challenging his release date from prison. In a petition for writ of habeas corpus he filed last year pursuant to 28 U.S.C. § 2241, Plaintiff sought immediate release based on his assertion that his release date was miscalculated. *See Walder v. United States*, No. 4:08 CV2376 (N.D. Ohio filed Oct. 7, 2008)(Polster, J.) Judge Polster denied his petition on December 8, 2008, but declined to address Plaintiff's breach of contract claim. Because the relevant facts were exhaustively recited in Judge Polster's Memorandum of Opinion dismissing Plaintiff's habeas petition, this court will recount part of the relevant facts from that opinion, as follows:

> The first 'out date' he was quoted was April 9, 2008. His case manager, S. Wilczak, corrected this date, however, after learning Mr. Walder would not be eligible for early release to a half-way house because he is not a citizen of the United States. Mr. Wilczak apologized for the error and advised petitioner that his new out date would be October 9, 2008, 'as it was re-verified by the BOP.' (Pet. at 5.) The October 9, 2008 'out date . . . [was] confirmed and re-confirmed by the BOP at each 6-mo. Team mtg. with a Program Review Report (P.R.R.) and with, at least, 3 separate Progress Reports (P.R.)' (Pet. at 5.)

> Mr. Walder was transferred to N.E.O.C.C. on August 28, 2007. During his first

2

> Team Meeting there on September 20, 2007, petitioner learned that his out date would be September 25, 2009. When he inquired about the change, he was advised to contact the records department.
>
> On the same date of his meeting, Mr. Walder submitted an Inmate Request Form to the Records Department. He explained that there was a discrepancy between the release date on his SENTRY-generated records at FSL Elkton and the release date shown on his Sentence Monitoring Computation Sheet at N.E.O.C.C.[1] He believed the problem stemmed from the date on which the prison computed the beginning of his sentence. Petitioner opined that the date on which he [sic] sentence began should start from September 24, 2001, the date on which he was arrested. Mr. Walder added that he spent four months at MDC-Brooklyn after his arrest and was released to home confinement with electronic monitoring in January 2002. He remained on home confinement until his sentence was imposed in January 2003. The records supervisor, P. Branaman, responded and advised Mr. Walder that any credit previously awarded for home detention was "in error." Citing BOP Program Statement 5880.28, Branaman explained that, regardless of how restrictive home confinement may be, the Supreme Court in *Reno v. Koray*, 515 U.S. 50 (1995) clarified that prisoners are not entitled to receive credit towards their prison sentences for time spent in home detention.
>
> Mr. Walder countered that the *Koray* opinion, P.S. 5880.28 and the prior custody credit statute, 18 U.S.C. § 3585(b), were all in effect at the time he was incarcerated at FSL Elkton. As such, he pointed out that a Unit Manager or Chairperson's signature on the SENTRY generated Program Review Report from FSL Elkton indicated that the information was correct. Moreover, he argued that the signature represented a certification that all information contained on the report was complete and accurate, including sentence related transactions.

(Memo. Op. of 12/8/08, at 2-3.) After fully exhausting his administrative remedies, Plaintiff filed this complaint. Based on the same assertions outlined above, he now argues his civil rights have been violated because Defendants allegedly breached an implied contract to release him on October 9, 2008.

Plaintiff premises his argument on the fact that the BOP has been delegated authority to calculate the amount of time a prisoner serves his sentence. Under this authority, the Bureau is

---

[1] Petitioner describes SENTRY as a "computer generated program for all pertinent data for inmates." (Pet. at 5.)

3

responsible "for SENTRY computation and information." Moreover, each of his Program Review Reports (P.R.R.) had to be signed by members of the Team (i.e. Unit Mgr., Case Mgr., Counselor). The signatures confirmed that "the information on the SENTRY-generated P.R.R. is correct and complete and filed in Section 3 of the Inmate's Central File." (Compl. at 8.) Plaintiff adds that the "SENTRY-generated P.R.R. are <u>signed</u>, <u>certifying</u> that all required team members are present and that the SENTRY-generated P.R.R. is <u>current</u> and <u>accurate</u>; and . . . <u>including</u> 'Sentence related transactions.'" (Compl. at 8)(emphasis in original.) Every P.R.R. Plaintiff received from FSL Elkton allegedly confirmed that his out date would be October 9, 2008. He argues further that Defendants were aware of the error upon which they based their correction to his out date before 2003; and, "[t]hus it might seem that all the signature confirmations were either ignorant, simply careless routine or willfully misleading." (Compl. at 9.)

Plaintiff also complains the BOP never addressed his breach of contract claim during the administrative exhaustion process. He notes that he has been a model prisoner during the entire period of his incarceration. Because he has faithfully fulfilled his responsibility as a prisoner he "also expects the same of BOP + CCA." (Compl. at 9.)

*Standard of Review*

Even though *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989);

---

[2] A claim may be dismissed <u>sua sponte</u>, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) (continued...)

4

*Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to section 1915(e).

## *42 U.S.C. § 1983*

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986).  Because Plaintiff is suing federal and not state officials, this court will liberally construe his complaint as raising a claim for damages under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[3]

*Bivens* claims, like section 1983, do not create substantive rights; rather, it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  The statute applies only if there is a deprivation of a constitutional right.  *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701 (1976); *Baker*, 443 U.S. at 146-47.  Thus, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States.  *Baker*, 443 U.S. at 140.  Plaintiff has not been so deprived.

---

(...continued)
[formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

[3]   In *Bivens*, the Supreme Court recognized an implied right of action, derived directly from the Constitution itself, that permits damages for constitutional violations against federal officials who are sued in their individual capacities.  This would, however, eliminate N.E.O.C.C. from liability as it is a private prison.  *Wilkie v. Robbins*, 551 U.S. 537 (2007) (citations omitted) ("We have seen no case for extending *Bivens* to claims against . . . private prisons.").

Courts have often considered the tension between the need to protect government officials from being sued for exercising their assigned duties and the need to protect individuals from violations of their constitutional rights. In the context of federal program administration, the constitutional right to due process is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the "correct" administrative decision does not rise to the level of a constitutional violation. *Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 381 (5th Cir.1987) (quoting *Bass v. U.S. Dept. of Agriculture*, 737 F.2d 1408 (5th Cir.1984)).

Just as the officials in *Williamson* and *Bass* were charged with administering Department of Agriculture programs, federal prison officials are charged with administering the computation of a prisoner's sentence, and interpreting the statute and regulations is a necessary element of administering the program. Although there is no allegation that prison officials misinterpreted a statute or regulations, even assuming that they did, Plaintiff fails to state a valid *Bivens* claim. His complaint, at most, asserts that prison officials were negligent in reviewing his sentencing data and thereby miscalculated his release date. Absent an indication that those officials intentionally sought to deprive plaintiff of his rights, they will not be held personally liable for any misinterpretation of the requirements of the regulations. *Bass*, 737 F.2d at 1416 (Constitution not implicated unless decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights); *see Kenny v. Block*, 884 F.2d 579, 579 (6th Cir.1989)(not every failure of a government agency to comply with its regulations rises to the level of a constitutional tort). By virtue of the fact that his petition for habeas relief was denied on the merits, there is no question Plaintiff is not being held beyond the term of imprisonment imposed by the sentencing court.

*Sovereign Immunity*

Even if Mr. Walder asserted a constitutional violation, he could not maintain a *Bivens* action against the United States. The United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the court's subject matter jurisdiction. *McGinness v. United States*, 90 F.3d 143, 145 (6th Cir. 1996). A waiver of sovereign immunity must be strictly construed, unequivocally expressed and cannot be implied. *United States v. King*, 395 U.S. 270, 276 (1957). Nothing in the pleading suggests the United States waived its sovereign immunity. *See Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 581 (2d Cir. 2000)(finding that agencies, instrumentalities, and officers of the federal government cannot be sued under antitrust laws); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991)(stating that a *Bivens* claim cannot be asserted against the United States government or its employees in their official capacities.)

*Breach of Contract*

Plaintiff contends he is entitled to relief because Defendants entered into an 'implied contractual relationship' with him when the program review team certified that his P.R.R. information was correct. It is well settled that a suit against a federal agency or officer is, in most instances, a suit against the United States, and necessarily raises issues of sovereign immunity. The Supreme Court has held that "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury . . . ,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947), and *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949)).

This suit is against the BOP and wardens of N.E.O.C.C. and FSL Elkton. With the exception

of N.E.O.C.C., the case is against federal agencies and a federal prison. Plaintiff seeks $375 for each day he is imprisoned beyond October 9, 2008; $500 to compensate for the cost of photocopies, postage, typing paper, ribbon; and $1 million dollars in punitive damages "to be used as payment in full of the Court imposed fine in the original criminal case (S1 02 CR 469 [RMB])." (Compl. at 11.) This is a demand to pay for the manner in which Defendants operate their facilities. Ultimately, it would force the government to act in a particular manner. The court finds, therefore, that this is a suit against the United States and implicates principles of sovereign immunity.

Sovereign immunity bars a claim against a federal official in his or her capacity unless a waiver of immunity is "'unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). In his claim of contractual breach, Plaintiff is essentially seeking to proceed in this court under the Little Tucker Act, which provides that:

> [t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States.

28 U.S.C. § 1346(a)(2). If, however, "an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the district court does not have jurisdiction regardless of other possible statutory bases." *A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir.1990) (citing *Amoco Production Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir.1987), *cert. denied*, 487 U.S. 1234 (1988)). Thus, this court must consider the effect of the jurisdictional provisions of the Tucker Act.

Section 1491 of the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment

8

>  upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. Based on Sections 1346(a)(2) and 1491 of the Tucker Act, this court has concurrent jurisdiction over claims for $10,000 or less.

In determining whether this court has jurisdiction relative to the amount in controversy, the sum of damages claimed by plaintiff must be examined in good faith. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) (where plaintiff has alleged a sum certain that exceeds the requisite amount in controversy to establish federal jurisdiction, that amount controls if made in good faith). While Plaintiff's request for compensatory damages is less than $10,000.00, his request for $1 million in punitive damages is not sought in good faith.

A request for punitive damages may be used to satisfy the amount-in-controversy requirement so long as it bears some relationship to the actual damages. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir.1990). Here, Plaintiff's demand is for reimbursement of a valid court-imposed fine that is clearly a part of his original sentence. This is not, however, an action to set aside Plaintiff's prison term, and the award of punitive damages he seeks would impermissibly tread into that territory. Accordingly, the punitive damages plaintiff seeks cannot be considered part of the jurisdictional amount in good faith. Plaintiff's claims are for less than $10,000 and thus below the threshold for a Tucker Act claim in the Federal Court of Claims.

Even assuming jurisdiction over his claim against the United States under the Little Tucker Act, the complaint fails to state a claim. Mere labels are insufficient to establish jurisdiction. His argument is premised on a belief that he is entitled to damages because his signed program review report indicated that he would be released on October 9, 2008. This court already determined,

however, that Plaintiff was not entitled to be released on October 9, 2008. Therefore, any claim that he is entitled to damages for every day he is held beyond October 9, 2008 suggests that he is being held beyond an authorized point. This does not constitute a claim for breach of contract. *See Ysasi v. Rivkind* 856 F.2d 1520, 1525 (11th Cir. 1988)(for United States to be bound by an implied-in-fact contract there must be "a promise, representation or statement by any authorized government official.") Notwithstanding the additional fact that Plaintiff has failed to allege that any government official had authority to bind the United States, *see City of El Centro v. United States*, 922 F.2d 816, 820 (C.A.Fed 1990)(quoting *Juda v. United States*, 6 Cl.Ct. 441, 452 (1984))(complaint failed to adequately allege representative of the government, whose representation was relied upon, had actual authority to bind the government in a contract), there is no theory in law that would permit an 'agreement' to shorten a prisoner's sentence, independent from an order of the court.

At best, Plaintiff is attempting to argue that he is being falsely imprisoned. The Court of Federal Claims exclusively hears claims for money damages for unjust imprisonment but only after a court has reversed a plaintiff's conviction on the grounds of innocence or if the President of the United States has pardoned the plaintiff. *Brown v. United States*, 42 Fed.Cl. 139, 141-42 (1998) (holding that, because plaintiff could not demonstrate that his conviction had been reversed or set aside on grounds of innocence, plaintiff "failed to meet the threshold for any potential recovery" under 28 U.S.C. §§ 1495 and 2513); *Lott v. United States*, 11 Cl. Ct. 852, 853 (1987)(holding that "the court's jurisdiction to entertain a claim for money damages for unjust conviction arises only *after* the challenged conviction has been reversed, on grounds of innocence, by a court of competent jurisdiction or by Presidential pardon") (emphasis in original). Based on relevant case law and the facts alleged, Plaintiff's claim fails as a matter of law, and it is not within the interests of justice to

transfer this matter to the Court of Claims. *See* 28 U.S.C. § 1406.

*Conclusion*

Accordingly, this action is dismissed under section 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

Date: June 30, 2009

s/John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.